IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATHEW WEST,

        Plaintiff,

                                    3:16-CV-02333-PK

                                    OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

PAPAK, Magistrate Judge:

        Mathew West ("Plaintiff") seeks judicial review of the Commissioner of Social

Security's ("Commissioner") decision denying his application for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction over

Plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to

allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed.

R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons that follow, the Commissioner's decision

is REVERSED and REMANDED for an immediate award of benefits.

Page 1 - OPINION AND ORDER

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or

do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-54. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.*, *quoting* Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.9520(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g). If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD

Plaintiff was born November 13, 1989. Tr. 31. Plaintiff graduated from high school with a 4.13 GPA. Tr. 282. His academic success was largely attributable to intensive management, supervision, and structure imposed by his parents. Tr. 280. After Plaintiff left home to attend his first year at the University of Oregon, he struggled academically and with symptoms of depression and anxiety. Tr. 282. Following a series of psychological and psychiatric evaluations, Plaintiff was eventually diagnosed with Asperger's disorder. Tr. 268. Doctors also

diagnosed Plaintiff with Attention Deficit Hyperactivity Disorder ("ADHD"), anxiety, and social anxiety disorder, and depression. Tr. 283, 287, 293, 299, 311. Plaintiff took Celexa to manage depression and anxiety. Tr. 254. Plaintiff subsequently attended one year at Lane County Community College and then returned to his parents' home and completed an Associate of Arts ("AA") degree from Tillamook Bay Community College in May 2011. Tr. 33, 194.

Plaintiff made several unsuccessful work attempts, including working at Einstein's Bagels and as a groundskeeper. Tr. 35-36, 49-50. Each of the jobs ended because Plaintiff was unable to maintain the focus and pace required to complete the work as needed. *Id.*

Plaintiff protectively filed for SSI on October 12, 2012, alleging impairments of Asperger's, anxiety, and obsessive compulsive disorder ("OCD"). Tr. 189, 193. His application was denied initially and upon review. A hearing was held before an ALJ on January 8, 2015. Tr. 25-74. Plaintiff, his father ("Mr. West"), and a vocational expert ("VE") testified. *Id.* On June 26, 2015, the ALJ issued an opinion finding Plaintiff not disabled. Tr. 8-20. The Appeals Council denied Plaintiff's request for review on October 13, 2016, making the ALJ's opinion the final decision of the Commissioner. Tr. 1-4. Plaintiff timely filed his request for district court review.

## SUMMARY OF ALJ FINDINGS

At step-one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 12, 2012, the application date. Tr. 13. Proceeding to step-two of the analysis, the ALJ found that Plaintiff had severe impairments of Asperger's syndrome, anxiety, and ADHD. *Id.*

At step-three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the enumerated impairments in 20 C.F.R. § 404, subpt. P, app. 1. *Id.* The ALJ therefore determined that Plaintiff retained the following RFC:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with some nonexertional limitations. He can perform simple tasks typical of occupations with a specific vocational preparation (SVP) rating of 1 or 2. He would work best in an environment that only involves simple work related decisions with few, if any workplace changes. He should not work in an environment that requires a fast pace task schedule. He can only have occasional, superficial and incidental interaction with others. He can work in proximity to coworkers, but would work best in an environment not requiring teamwork. He also needs a supervisor to meet with him once a week after he has learned required work tasks to remind him of the work tasks and how timely he needs to perform them.

Tr. 14-15.

At step-four, the ALJ found that Plaintiff had no past relevant work. Tr. 19. At step-five, based on the testimony of the VE, the ALJ found Plaintiff could perform work as a yard worker, nursery worker, and warehouse worker, all jobs that exist in significant numbers in the national economy. Tr. 20.

## ANALYSIS

Plaintiff argues the ALJ: (1) erroneously found Plaintiff capable of performing competitive employment; (2) erred by finding the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"); (3) failed to provide legally sufficient rationales for discrediting Plaintiff's subjective symptom testimony; (4) failed to provide legally sufficient reasons for discrediting lay witness testimony; (5) improperly evaluated medical opinion evidence; and (6) improperly discredited "other source" opinion evidence.

# I.    RFC Formulation

Plaintiff argues that the portion of the RFC requiring a supervisor to meet with Plaintiff once a week, after he has learned the job, to remind Plaintiff of the required work tasks and the timeliness with which he must perform them, is an impermissible "accommodation," such as that contemplated under the Americans with Disabilities Act ("ADA"). Plaintiff argues that because the RFC requires special employer accommodation, Plaintiff is not capable of performing competitive employment as a matter of law.

The Social Security Act and the ADA provide two different ways to help people with disabilities. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999). While the Act provides monetary benefits to disabled individuals who are unable to engage in any kind of substantial gainful work that exists in the national economy, the ADA protects individuals from workplace discrimination based on disability. 42 U.S.C. §§ 423(d)(2)(A), 12112, 1382c(a)(3)(A); *see Cleveland,* 526 U.S. at 801.

Briefly, the ADA prohibits a "covered entity" from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Discrimination can include refusal to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the covered entity can show that providing such accommodation would "impose an undue hardship on the operation of the business." *Id*. A "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires." 42 U.S.C. § 12111. A "reasonable accommodation" is a "modification[] or adjustment[] to the work environment, or to the manner or circumstances under which the position is . . . customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that job." 29 C.F.R. § 1630.20(o)(1)(ii).

The Act, however, requires no determinations about reasonable accommodation in order to determine whether an individual is disabled and entitled to benefits. *Cleveland*, 526 U.S. at 803 ("[W]hen the [Social Security Administration] determines whether an individual is disabled for [Social Security Disability Insurance] purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." (italics in original)). Indeed, Social Security Administration policy prohibits consideration of whether a claimant can perform "other work that exists in significant numbers in the national economy . . . with accommodations, even if an employer would be required to provide reasonable accommodations under the [ADA]." SSR 11-2p at *19, 2011 SSR LEXIS 2. Accordingly, whether a claimant can perform other work with an accommodation may not be considered in the disability analysis.

An RFC is the most a person can do despite his limitations. 20 C.F.R. § 416.945. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means [eight] hours a day, for [five] days a week, or an equivalent work schedule." SSR 96-8p at *1, 1996 SSR LEXIS 5.

Typically, an RFC describes a claimant's abilities or limitations in regards to general abilities required to engage in work, and the conditions and characteristics of possible work

environments (*e.g.*, concentration, pace, ability to sit or stand, proximity to dangers or distractions like heights or machinery, and whether the claimant can have contact with the public or engage in teamwork). Here, for example, the ALJ found Plaintiff had the RFC to do jobs involving only simple decisions, with few workplace changes, but not fast paced work or work requiring teamwork. Tr. 14. In contrast, the requirement that Plaintiff's supervisor hold weekly meetings to remind Plaintiff of work tasks he has already learned how to do and the timeliness with which he must perform the tasks, imposes a condition on the employer beyond what is typical in the work environment. In other words, whereas other aspects of the RFC limit the types of jobs Plaintiff can perform due to his impairments, this part of the RFC requires modification to any job environment based on the nature of Plaintiff's disabilities. Such modification to the work environment is an accommodation.

The Commissioner argues that because the VE testified that this limitation would not preclude employment, it was not error. The issue, however, is not whether the requirement would preclude employment, but whether the condition is an accommodation. As noted above, it is and its inclusion in the RFC was error.

## II.    Step Five Analysis

Plaintiff argues that the ALJ erred by failing to resolve the conflict between the DOT and the VE's testimony. Specifically, Plaintiff argues that all of the jobs identified by the VE require an employee to be able to remember simple instructions, an aptitude that conflicts with the RFC limitations requiring weekly reminder meetings. The Commissioner argues that any conflict between the VE's testimony and the DOT is not "apparent and obvious," but even if it is, the

VE's testimony that such weekly reminder meetings would not preclude employment resolves any conflict with the DOT.

Generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. SSR 00-4p at *4, 2000 SSR LEXIS 8. An ALJ has a duty to inquire further where a conflict between the DOT and VE's testimony is "obvious and apparent." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). The duty to ask follow-up questions is fact-dependent, and "the more obscure the job, the less likely common experience will dictate the result." *Id.* "When there is an apparent conflict between the vocation expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Before an ALJ may rely on a VE's testimony to make a disability determination, the ALJ must reconcile the apparent conflict by asking the VE to explain, "in some detail, why there is no conflict between the DOT and the applicant's RFC." *Lamear*, 865 F.3d at 1205.

At the hearing, the ALJ posed a series of hypothetical questions asking the VE to assume a person of Plaintiff's age and education, with no past relevant work. Tr. 70. The first hypothetical involved a person without any physical limitations who would be able to understand, remember, and carry out simple tasks or instructions typical of occupations with a specific vocational preparation of one or two, and who would work best in an environment with few, if any, workplace changes and that involved only simple work-related decisions. *Id.* Additionally, the hypothetical person should not work in a fast paced environment, like an assembly line, or perform work that required teamwork, although he could work in proximity to

others, and should have only occasional, superficial and incidental interaction with others. *Id.*
When asked whether this hypothetical person could perform jobs that exist in significant
numbers in the national economy, the VE responded that such a person could do the jobs of yard
worker, nursery worker, and warehouse worker. Tr. 71.

In the second hypothetical, the ALJ asked whether the jobs identified by the VE would be
affected if such a person "would need to have a supervisor come over, say once a week, after
they've learned the task . . . . just to give reminders of exactly what the tasks are they're to do,
and how timely they're to perform it." Tr. 71. The VE responded no, the jobs would not be
affected. But, in response to a third hypothetical, the VE stated that a person who needed daily
reminders would not be able to sustain competitive employment. Tr. 72. In a fourth
hypothetical, assuming the same unskilled work from the first hypothetical, the VE testified that
a person who was only able to perform 75 percent of the assigned tasks on daily basis would not
be able to sustain competitive employment. Tr. 73. When asked whether his testimony was
consistent with the Dictionary of Occupational Titles, the VE responded, "[e]xcept when I've
testified to the third and fourth hypothetical, and that's based on upon my professional
experience." *Id.* Ultimately, the ALJ determined the VE's testimony was "consistent with the
information contained in the [DOT]," and found that Plaintiff could perform the jobs identified.
Tr. 20.

"Work-related mental activities generally required by competitive, remunerative work
include the ability to: understand, carry out, and remember instructions." SSR 96-8p at *17,
1996 SSR LEXIS 5. One way the DOT describes the level of mental activity required by
different jobs is "specific vocational preparation" ("SVP"). SVP is defined as the "amount of

lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C. An SVP of "1" requires a "short demonstration" while and SVP of "2" requires "anything beyond a short demonstration up to and including [one] month." *Id.* All of the jobs identified by the VE (yard worker, nursery worker, and warehouse worker) are SVP-2. Tr. 71. As defined by the DOT then, a worker should be able to learn, and remember, how to perform these jobs in no more than one month's time. Thus, a requirement that a supervisor in one of these jobs meet with Plaintiff on a weekly basis, after he has learned how to perform the work, is an apparent conflict. The VE's unexplained testimony that such weekly meetings would not preclude employment does not resolve the apparent conflict. Accordingly, the ALJ erred.

## III.  Subjective Symptom Testimony

Plaintiff argues the ALJ committed error by discrediting Plaintiff's subjective symptom testimony without explaining what evidence undermined what symptom allegation or explaining how certain evidence contradicted Plaintiff's testimony. The Court agrees.

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1281, 1283-84). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what

evidence undermines the claimant's complaints." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995). The reasons proffered must be "sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50

F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). However, even if not all of the ALJ's

findings for discrediting symptom allegations are upheld, the overall decision may still be upheld,

assuming the ALJ provided other valid rationales. *Batson*, 359 F.3d at 1197.

The ALJ summarized Plaintiff's symptom testimony[1] as follows:

> The claimant reported it is easy for him to get off task. He stated
> when he has tried to work, he has had difficulty keeping the pace
> required for him to do his work tasks. He stated at the end of the work
> shift he struggled with fatigue and maintaining focus. He stated he
> also has mood swings. He stated sometimes he is manic and excited
> and sometimes he is depressed and moody.

Tr. 15.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity,

---

[1]Notably, Plaintiff's disability application was completed by his parents (the Wests). Tr. 216-26. The Wests reported that Plaintiff was unable to obtain or retain employment due to Asperger's symptoms, specifically: the inability to concentrate which presented difficulty staying on task and completing tasks; the need for "black and white," step-by-step instructions and "constant supervision;" the inability to perform at the necessary pace and the inability to keep track of time due to the lack of an "inner clock;" the inability to read body language; and the inability to multi-task. Tr. 218. The Wests stated that Plaintiff needed reminders to brush his teeth, take a shower, take medication, and to go to bed. Tr. 220-21. With reminders and supervision, Plaintiff was capable of doing household chores, like laundry, putting away dishes, mowing, vacuuming, and dusting. Tr. 222. The Wests stated that Plaintiff was able to read, watch television, and surf the internet. Socially, Plaintiff may see someone once a week and communicate via Skype. According to the Wests, Plaintiff had limited social interactions because "people don't know how to spend time with Mathew" and it was "very difficult to have a [two]-way conversation." Tr. 224. The Wests reported that Plaintiff became stressed by confrontation and had difficulty with certain sensory stimuli, particularly loud noises, fluorescent lights, and smells. Tr. 225.

persistence, and limiting effects of his symptoms were not credible. Tr. 15.

Plaintiff testified that he spent time trying to connect with people his own age and that he had a "handful" of friends with whom he did things like watch movies and prepare dinner. Tr. 32, 41-42. He went with friends on a trip to a mountain cabin, and accompanied friends to a couple of church-based outreach events to help the homeless in downtown Portland. Tr. 41-42. Relying on Plaintiff's testimony and reciting evidence from Plaintiff's medical records indicating Plaintiff was "pleasant with some social eccentricities," but able to make friends, and that Plaintiff was friendly, talkative, and made good eye contact, the ALJ concluded that "although the claimant has some limitations regarding his social functioning, he is able to engage in some limited social activities, as provided for in his [RFC]." Tr. 15-16. The ALJ, however, failed to state how the evidence in the record contradicted Plaintiff's testimony regarding his social activities. *Dodrill*, 12 F.3d at 917.

The ALJ noted that, with a "fairly high level of structure" provided by his parents, Plaintiff did well in high school, and that Plaintiff was able to reach out to an instructor for help and successfully complete an AA degree. Tr. 16. Indeed, Plaintiff testified that during high school, his parents assisted him by keeping track of assignment due dates, by helping him practice presentations, and by keeping physical track of Plaintiff's homework and checking it over. Tr. 42-43. Plaintiff testified that his parents also provided general homework assistance. Tr. 43. While in community college, Plaintiff said he took an average of three classes per term. Tr. 34, 46. He stated that he had some difficulty completing weekly exercises in a timely fashion and that he struggled with concepts in his math class, but he was able to seek extra help from his teacher. Tr. 45-46.

The ALJ also found that Plaintiff "was able to work well doing volunteer retail work . . . . [and] this position ended because he moved and because he wanted to look for paid work, not due to

Page 15 - OPINION AND ORDER

his alleged disability." Tr. 16. Plaintiff testified that he volunteered at a non-for-profit retail store where he worked six hours per day, five days per week for six months. Tr. 39-40. His duties included organizing and sorting donations and interacting with customers. *Id.* The record, however, is silent as to how "well" Plaintiff performed in this position; notably, though, the retail store declined to hire him as a paid employee after six months of extensive volunteering, and Plaintiff stated that this was why he left the position. Tr. 39-40. Notwithstanding these mischaracterizations, the ALJ failed to state how any of this evidence impugned Plaintiff's credibility and instead concluded that "[a]ny limitations he has with coping skills such as organization are accounted for in the [RFC]." Tr. 16.

The ALJ also discredited Plaintiff's credibility based upon "daily activities, which are not limited to the extent one would expect given his complaints of disabling symptoms and limitations." Tr. 16. A claimant's activities of daily living ("ADLs") may support an adverse credibility finding when the ADLs illustrate a contradiction with previous testimony, or show that the activities "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Courts have repeatedly cautioned, however, that a claimant's ability to engage in activities of daily living do not necessarily translate into the ability to perform work in the pressures of a workplace environment. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Where, as here, Plaintiff's impairment allegations directly implicate his mental ability to perform independently in a full-time, competitive workplace environment, the ALJ was required to explain how Plaintiff's ADLs contradicted his symptom testimony. *See Orn*, 495 F.3d at 639 (*quoting Burch*, 400 F.3d 676,681 (9th Cir. 2005)) ("The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."). Here, however, the ALJ listed numerous activities that Plaintiff was able to engage

in, such as being able to ride a bike and play guitar, but failed to explain how these activities are transferrable to the workplace or how these activities impugn Plaintiff's credibility.[2]

Citing an unpublished opinion from the Western District of Washington, the Commissioner argues that the record as a whole supports the ALJ's findings and that the ALJ was not required to refute Plaintiff's testimony on a point-by-point basis. Irrespective of whether this is a correct statement of the law, in order for the court to meaningfully conduct its review, the ALJ is required to specifically identify at least *some* part of a claimant's testimony found to be not credible and, in regards to that testimony, provide a clear and convincing reason, supported by the record, for the credibility determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (as amended Nov. 4, 2015) (holding "that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination."). Here, ALJ failed to identify what symptoms were not credible and why, but rather explained how each symptom was accommodated for in the RFC, leaving the Court with nothing to review under the applicable standard. Accordingly, this was error.

---

[2] In several parts of the credibility discussion, including the description of Plaintiff's ADLs, the ALJ mischaracterized the evidence. The ALJ found that Plaintiff "essentially" lived on his own half of the week because Plaintiff's father traveled to Tillamook. Tr. 16. In fact, Plaintiff's father traveled to Tillamook only for long weekends, and sometimes Plaintiff accompanied him, as the ALJ noted later in that same paragraph. Tr. 16, 31-32, 54. Additionally, the ALJ found Plaintiff was able to manage his medications (tr. 16), but the Court can find no such evidence; to the contrary, the record indicates Plaintiff required reminders to do things like take his medication, brush his teeth, and shower. Tr. 59-60, 65. The record also indicates that although Plaintiff was able to do basic household chores like laundry, vacuuming, and dishes, he required reminders to do them. Tr. 47. That Plaintiff needed reminders and supervision are the salient facts. Regardless of these mischaracterizations, the ALJ failed to explain how these activities impugn Plaintiff's symptom allegations.

## IV. Lay Witness Evidence

Plaintiff argues the ALJ erred in discrediting Mr. West's testimony by failing to identify what parts of the record undermined his testimony or by failing to explain how Plaintiff's ADLs conflict with Mr. West's testimony.

Mr. West testified that while Plaintiff was in high school, Mr. West and his wife provided Plaintiff with a regimented schedule and closely supervised Plaintiff's academic work, including telling him when it was time to do his homework. Tr. 56. After Plaintiff left home to attend the University of Oregon, Mr. West continued to supervise Plaintiff's school work via daily communications, maintaining copies of Plaintiff's class schedule and syllabi. *Id.* When Mr. West discontinued the daily contact with Plaintiff, Plaintiff "went into a deep depression" and stopped attending classes and turning in assignments. Tr. 57. The following academic year, Plaintiff attended community college away from home, and Mr. West again supervised Plaintiff through frequent communications. Tr. 57-58. When Mr. West ceased supervising Plaintiff, Plaintiff again became depressed and stopped going to classes. *Id.* Mr. West observed that during these "deep depressions," Plaintiff appeared to "disengag[e] with the world" and stopped bathing. Tr. 58. Even after moving to Beaverton with Mr. West, Plaintiff needed reminders to shower and brush his teeth. Tr. 59-60.

Mr. West testified that Plaintiff was "let go" from his job at Einstein Bagels, even after the employer brought in a job coach to try to accommodate Plaintiff's limitations. Tr. 55. Mr. West testified that Plaintiff worked with vocational rehabilitation through the State of Oregon in addition to seeking psychological assessments to identify Plaintiff's issues, and seeking counseling and attending Asperger's support groups. Tr. 62-63. Based on these experiences, Plaintiff's unsuccessful work

attempts, and Mr. West's own experiences and observations, Mr. West opined that Plaintiff "cannot work independently without very close supervision." Tr. 61.

After summarizing Mr. West's testimony, the ALJ gave it "some weight," finding that the severity of Plaintiff's limitations as alleged by Mr. West were "not entirely supported by the rest of the record of evidence, including the claimant's activities of daily living." Tr. 17.

Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account. *Tobeler v. Colvin*, 749 F.3d 830, 832-34 (9th Cir. 2014); *Dodrill*, 12 F.3d at 919. In order to disregard such testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Here, the ALJ's finding that the record as a whole, including Plaintiff's ADLs, undermined Mr. West's testimony fails to meet the "germane" standard. This is largely because the ambiguous and conclusory finding fails to identify either what aspects of Mr. West's testimony are undermined, what parts of the "rest of the record of evidence" contradicted his testimony, or how Plaintiff's ADLs impugn Mr. West. Nor can this reasoning be gleaned from other parts of the discussion. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("[T]he ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons."). Accordingly, the ALJ erred.

## V.    Medical Opinion Evidence

<u>James Powell, Psy.D.</u>

Plaintiff argues the ALJ erred by rejecting Dr. Powell's report based on having only examined Plaintiff once. Plaintiff also argues that the ALJ erred by inaccurately finding Dr. Powell's opinion was based on Plaintiff's mother's reports; however, Plaintiff adds, even if Dr. Powell's opinion was

based on Plaintiff's mother's reports, the ALJ still committed error because the ALJ made no adverse credibility finding regarding Plaintiff's mother and therefore could not discredit Dr. Powell's opinion based on her statements.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester*, 81 F.3d at 830 (9th Cir. 1995)). To reject the uncontroverted opinion of a treating or examining physician, an ALJ must articulate "clear and convincing reasons" for doing so. *Bayliss v. Barhart*, 427 F. 3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 803-31). If a treating or examining physician's opinion is in conflict with substantial evidence or with another physician's opinion, however, it may be rejected for merely "specific and legitimate reasons." *Id.*

In June 2012, Plaintiff underwent a psychological evaluation with Dr. Powell. Tr. 259-69. Dr. Powell interviewed Plaintiff and his mother, made behavioral and mental status observations, reviewed medical, psychological, and psychiatric records, and administered various tests. Tr. 259. Ultimately, Dr. Powell diagnosed Plaintiff with Asperger's disorder with a history of difficulty with attention and organization, and anxiety disorder. Tr. 268. Dr. Powell noted that Plaintiff appeared to "function relatively well in various routines, when there is a relatively high level of structure, as well as in smaller group settings." *Id.* Dr. Powell opined that Plaintiff would experience a "heightened level of anxiety and disorganization, as well as depression, when subjected to more populated group settings and crowds," and in settings with little structure. *Id.* Although Plaintiff did not appear to have any developmental or learning disabilities, Dr. Powell noted Plaintiff had "relative difficulty" processing information in more of an auditory manner but that even those scores fell in the average to

low-average range. Tr. 269. Dr. Powell opined that Asperger's contributed to Plaintiff's "severe deficits in multiple areas of adaptive functioning that would include leisure and self-direction." *Id*. Dr. Powell opined that Plaintiff was not able to "independently manage his own welfare for an extended period of time, either at home or in the community without some external support and structure." *Id*.

The ALJ gave partial weight to Dr. Powell's opinions, remarking that they were "based on a one time examination, largely based on the claimant's mother's report and are not supported by the overall objective evidence." Tr. 18.

As an initial matter, discrediting an examining physician based on having examined a claimant only one time is not, by itself, a legitimate reason to discredit the opinion. Indeed, the hierarchy of weight to be assigned to opinions of treating, examining, and non-examining physicians contemplates a one-time exam by an expert.[3] 20 C.F.R. § 416.927(c); *see also* 20 C.F.R. §§ 416.917, 416.919.

Next, the general rule that allows an ALJ to reject opinions based on a claimant's self- reports does not apply in the same manner to opinions regarding mental illness. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). This is because of the nature of psychiatry, which depends "in part on the patient's self report, as well as the clinician's observations of the patient." *Id*. Likewise, while a finding that a doctor's report was based on subjective third-party report may justify rejection of a medical opinion, that finding by itself falls short of the applicable specific and legitimate standard, which requires an ALJ to "set out a detailed and thorough summary of the facts and conflicting

---

[3] Given that the ALJ gave great weight to the opinion of one-time examining psychologist, David Gostnell, Ph.D. (tr. 18, 300-11), discrediting Dr. Powell's opinion because he examined Plaintiff only once seems internally inconsistent.

clinical evidence, stating his interpretations thereof, and making findings." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999) (quoting *Magallanes*, 881 F.2d at 751; *Bayliss*, 427 F.3d at 1216-17. Here the ALJ made no adverse credibility findings regarding Plaintiff's mother, and failed to explain why Plaintiff's mother's reports were unreliable. The fact that she is a third-party is an insufficient reason, in and of itself, to discredit Dr. Powell's opinion.

Likewise, the ALJ did not explain the finding that Dr. Powell's opinions were not supported by the "overall objective evidence." Tr. 18. After a careful review of the entire record, the Court could not identify what cumulative "objective evidence" the ALJ found to be in conflict with Dr. Powell's opinion. Accordingly, this was not a specific and legitimate reason to discredit Dr. Powell's opinion.

Additionally, the ALJ discredited Dr. Powell's opinion because the limitations identified by Dr. Powell "concern the largely unstructured contexts of leisure, self-direction and socialization, and not a basic work-environment with clearly established work duties as provided for in the [RFC]." Tr. 18. Yet, the ALJ discredited Plaintiff and Mr. West based upon Plaintiff's leisure and socialization activities, finding these demonstrated Plaintiff's functionality was greater than alleged. Tr. 16-17. To find that a claimant's *ability* to conduct himself in his personal affairs shows he is able to work, but his *inability* to do so is irrelevant to that analysis defies logic. While a claimant's ability to engage in ADLs that contradict his symptom allegations can be a clear and convincing reason to discredit that testimony, a doctor's opinion that a claimant is unable to function independently in activities of "leisure, self-direction, and socialization" is certainly relevant to a claimant's ability to engage in full-time competitive employment. Consequently, the ALJ's contradictory finding is not a legitimate reason to discredit Dr. Powell's opinion.

The Commissioner argues that the ALJ properly rejected Dr. Powell's opinion based on conflicts with the opinion of another examining psychologist, Dr. Gostnell. The ALJ, however, did not rely on that rationale in making her finding, and the Court cannot affirm on grounds the ALJ did not invoke. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

<u>Keith Lowenstein, M.D.</u>

Plaintiff argues the ALJ erred by failing to provide any reason for rejecting the opinions of treating physician Keith Lowenstein, M.D. The Commissioner responds that Plaintiff waived the issue by failing to develop the argument. While Plaintiff's argument is brief, Plaintiff made a short and plain statement of his claim for relief, and that is sufficient. Fed. R. Civ. P. 8(a)(2).

Alternatively, the Commissioner argues that failure to address Dr. Lowenstein's opinions was harmless because any limitations described by Dr. Lowenstein were accounted for in the RFC.

The ALJ failed to discuss the opinions of Dr. Lowenstein. This was error. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("[T]he ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons supported by substantial evidence in the record for doing so.'" (quoting *Lester*, 81 F.3d at 830)). However, Dr. Lowenstein's examination records primarily consist of a history of Plaintiff's psychological symptoms, and brief mental status exams. Tr. 280-85. To the extent the records contain a physician's opinion, it was limited to diagnostic concerns of ADHD, "possible history of major depression," social phobia, and possible Asperger's traits. Tr. 283-84. Additionally, Dr. Lowenstein opined that "[s]ocial anxiety is an issue and will need to be monitored . . . ." Tr. 285. Dr. Lowenstein did not opine as to any functional limitations. Although the records are certainly relevant in regards to the longitudinal consistency of symptom allegations made by Plaintiff and his parents, Dr. Lowenstein's assessments offer little

insight into the severity of Plaintiff's impairments. Moreover, Plaintiff does not argue that Dr. Lowenstein's opinions show greater limitations than those identified in the ALJ's opinion. Where it is "inconsequential to the ultimate nondisability determination," an error is harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Thus, failure to discuss Dr. Lowenstein's opinions was harmless error.

## VI. "Other" Source Evidence

Plaintiff argues the ALJ erred by rejecting the opinion of mental health counselor, Peggy Piers, because the ALJ was unable to review Ms. Piers' chart notes. Additionally, Plaintiff argues the ALJ erred by failing to make the findings required by SSR 06-3p, and by failing to explain how Plaintiff's ability to seek help from a teacher undermines Ms. Piers' opinion.

Ms. Piers submitted a two-page opinion letter describing her background and experience working with clients on the Autism spectrum. Tr. 252-53. Ms. Piers explained that she had known Plaintiff for two years, and described her impressions of Plaintiff's limitations, challenges, and strengths related to being on the Autism spectrum and to anxiety. *Id.* The record indicates that the ALJ attempted to obtain counseling records from Ms. Piers but was unsuccessful. Tr. 66-68, 255.

The ALJ gave limited weight to Ms. Piers' opinions, noting among other reasons that there were no corresponding counseling records to support her opinion. Tr. 17.

The opinion of a non-medical source, such as a counselor, may not used to establish a disability. 20 C.F.R. § 416.921. However, opinion evidence from an "other source" may be considered when determining the limiting effects an established disability. 20 C.F.R. § 416.927. Among the factors the ALJ may consider in deciding what weight to accord an "other source" opinion, is "the nature and extent of the relationship between the source and the individual, . . . [and]

the degree to which the source presents relevant evidence to support his or her opinion." SSR 06-03p at *11, 2006 SSR LEXIS 5; 20 C.F.R. 416.927(f). Because "other sources" are accorded less deference than the opinions of physicians, the ALJ's reason for rejecting such testimony must only be germane to the source. *Lewis*, 236 F.3d at 511.

Here, the ALJ accorded limited weight to Ms. Piers opinion because there were no treatment notes or other documentation supporting her opinion. The lack of supporting relevant evidence is a germane reason to discredit Ms. Piers' opinion. Accordingly, the ALJ did not err in according limited weight to Ms. Piers opinion.

## REMAND

The ALJ's decision did not provide legally sufficient reasons for discrediting Plaintiff's subjective symptom allegations, Mr. West's testimony, or Dr. Powell's opinion. Notwithstanding those errors, the ALJ formulated an RFC that compels a finding that Plaintiff is disabled: Plaintiff is unable to work unless offered an accommodation by an employer. That reason alone necessitates remand for an immediate award of benefits. Moreover, for the reasons that follow, under the credit-as-true analysis, the Court finds additional proceedings would serve no useful purpose and remand for an award of benefits is appropriate.

The decision whether to remand for the further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135,

1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court

may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a

claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of

benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such

evidence; (2) there are no outstanding issues that must be resolved before a determination of disability

can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant

disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision.

*Connett*, 340 F.3d 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc)). The

reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*,

623 F.3d 1032, 1035 (9th Cir. 2010).

The first prong of the credit-as-true test is met by virtue of the ALJ's errors evaluating the

medical opinion of Dr. Powell, and the erroneous credibility determinations regarding Plaintiff's

symptoms.

As to the second prong, the Commissioner argues that it is not met as it applies to Dr.

Powell's opinion. Specifically, the Commissioner argues that there is an unresolved conflict between

Dr. Powell's opinion that Plaintiff would do best in a structured environment and Dr. Gostnell's

opinion that Plaintiff has only mild to moderate limitations. To the contrary, after summarizing

Plaintiff's psychological records, including Dr. Powell's evaluation, Dr. Gostnell found that Plaintiff's

> presentation for the current exam is generally consistent with previous
> evaluations. . . . His social anxiety and difficulties with pacing,
> organization and focus are generally consistent with the diagnosis,

compromising his capacity for self-management, independent living and other adaptive behaviors. He continues to live with his parents, who provide him a level of supervision, structure and support that ameliorates these deficiencies. . . . As he has historically demonstrated, he possesses a number of essential skills for basic employment, but has never been able to sustain the necessary focus, organizational skills or intrinsic structure to sustain employment.

Tr. 310. Thus, to the extent both doctors recognized that Plaintiff functions better with externally imposed structure, there is no material conflict between the doctors' opinions. The Commissioner does not argue, nor does the Court identify, any other unresolved issues of fact or ambiguities in the record. Accordingly, the second prong is met.

Considering the entire record, it is clear that the ALJ would have been required to find Plaintiff disabled had the evidence been properly credited. Indeed, even without properly crediting the evidence, the ALJ's findings mandate a disability finding. Accordingly, the Court exercises its discretion to remand this case for an immediate award of benefits.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Plaintiff's application for supplemental security income is reversed and remanded for immediate award of benefits.

Dated this ___15th___ day of May, 2018.

Honorable Paul Papak
United States Magistrate Judge

Page 27 - OPINION AND ORDER